630 So.2d 1278 (1994)
STATE of Louisiana
v.
Allen ROBERTSON, Jr.
No. 92-KA-2660.
Supreme Court of Louisiana.
January 14, 1994.
*1279 Lennie F. Perez, Richard C. Guerriero, Jr., Baton Rouge, for applicant.
Richard P. Ieyoub, Atty. Gen., Douglas P. Moreau, Dist. Atty., Premila Burns, Gwendolyn K. Brown, Baton Rouge, for respondent.
KIMBALL, Justice.[*]
A jury convicted defendant, Allen Robertson, Jr., of two counts of first degree murder and sentenced him to death for the January 1, 1991 stabbing deaths of Morris and Kazuko Prestenback. On direct appeal to this court under La. Const. Art. 5, § 5(D), defendant appeals his conviction and sentence, assigning thirty-one assignments of error. Because we find reversible error in the failure of the trial court to sustain defendant's challenge for cause of venire member Robert Payne, we reverse the convictions and the sentence of death, pretermit discussion of defendant's remaining assignments of error, and remand for a new trial.

ASSIGNMENT OF ERROR NO. 4
Defendant argues the trial judge erred in denying his challenge for cause of prospective juror, Robert Payne, thus requiring defendant to exercise one of his peremptory challenges to excuse Mr. Payne, and thereby depriving him of the use of one of his peremptory challenges.
In State v. Breedlove, 199 La. 965, 7 So.2d 221 (1942), this court held three requirements were necessary before the ruling of a trial judge refusing to sustain a defendant's challenge for cause constituted reversible error: (1) an erroneous ruling refusing to sustain the defendant's challenge for cause; (2) exhaustion of all of the defendant's peremptory challenges; and (3) the forced acceptance by defendant of an obnoxious juror, either the one that should have been excused for cause, or, if the juror was peremptorily challenged, a subsequent juror that defendant would have peremptorily challenged but for the fact that he had already *1280 exhausted his peremptory challenges.[1] Chief Justice O'Neill strongly dissented, arguing the latter requirement was not necessary.
When the Louisiana Code of Criminal Procedure became effective on January 1, 1967, it was clear, as the Official Revision Comment notes, that Article 800 legislatively overruled the Breedlove decision in part by adopting the dissenting opinion of Chief Justice O'Neill regarding the third requirement.[2] Thus, if the defendant could show (1) he had exhausted all of his peremptory challenges; and (2) the trial judge erred in refusing to sustain a challenge for cause by the defendant, then there was reversible error.[3] The error was held to be reversible, and not merely harmless, primarily because of the protection given to a defendant's right to peremptory challenges found in the Louisiana Constitution at Article 1, Section 17. As explained in State v. Monroe, 366 So.2d 1345, 1347 (La.1978), and State v. McIntyre, 365 So.2d 1348, 1351 (La.1978) (emphasis added):
La. Const. art. 1, § 17 provides that the accused has a right to challenge jurors peremptorily; the number of challenges to be fixed by law. La.Code Crim.P. art. 799 provides that in trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges. Therefore, an erroneous ruling of a trial judge which deprives a defendant of one of his peremptory challenges constitutes a substantial violation of a constitutional or statutory right requiring reversal of his conviction and sentence. La.Code Crim.P. art. 921.
In 1983, Article 800 was amended and currently provides in pertinent part:
A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefore shall be stated at the time of objection.
Whereas before 1983, a defendant who had been erroneously denied a valid challenge for cause could not even complain about the error on appeal unless he had exercised all his peremptory challenges, under the new version of Article 800, a defendant is now permitted to complain of a ruling refusing to sustain his challenge for cause even if he had not thereafter exercised all of his peremptory challenges. State v. Vanderpool, 493 So.2d 574, 575 (La.1986). See also State v. Copeland, 530 So.2d 526, 535 (La.1988). In such a case, the defendant must be able to show some prejudice in order to overcome the requirement of La.C.Cr.P. art. 921 that "[a] judgment or ruling shall not be reversed by an appellate court because of any error ... which does not affect substantial rights of the accused."
The 1983 amendment to Article 800 does not change the law, however, as regards a defendant who has exhausted all of his peremptory challenges. "Prejudice is presumed when a challenge for cause is erroneously denied and all of defendant's peremptory challenges are exhausted. A trial court's erroneous ruling which deprives a defendant of a peremptory challenge substantially violates that defendant's rights." State v. Ross, 623 So.2d 643, 644 (La.1993) (citing McIntyre) (citations omitted) (emphasis added). See also State v. Bourque, 622 So.2d 198, 225 (La.1993); State v. Lee, 559 So.2d 1310, 1317 (La.1990); State v. Comeaux, 514 So.2d 84, *1281 93 (La.1987); and State v. Brown, 496 So.2d 261, 263-66 (La.1986). To prove there has been reversible error warranting reversal of the conviction, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. Ross, 623 So.2d at 644; Bourque, 622 So.2d at 225; McIntyre, 365 So.2d at 1351.
Defendant in this case exhausted all of his peremptory challenges. Therefore, we must determine whether the trial court erred in denying defendant's challenge for cause as to potential juror Robert Payne. If so, then defendant's constitutional and statutory right to 12 peremptory challenges has been violated, prejudice is presumed, and there is reversible error requiring reversal of the convictions and sentence.[4]
At issue in this case is a challenge for cause based on a potential juror's apparent predisposition to automatically impose the death penalty, regardless of any evidence that might be developed at the trial or the sentencing hearing, and regardless of the fact the law requires a juror to consider mitigating circumstances in the sentencing phase. Under La.C.Cr.P. art. 797(2), a defendant may challenge a juror for cause on the ground that "[t]he juror is not impartial, whatever the cause of his partiality." Additionally, La.C.Cr.P. art. 797(4) provides a defendant may challenge a juror for cause on the ground that "[t]he juror will not accept the law as given to him by the court."
A trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. State v. Knighton, 436 So.2d 1141, 1148 (La.1983). A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. Copeland, supra, 530 So.2d at 534. "[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." State v. Hallal, 557 So.2d 1388, 1389-90 (La.1990). As Chief Justice Calogero stated in Lee,supra, 559 So.2d at 1318 (citations omitted):
When a juror expresses a predisposition as to the outcome of a trial [or in this case, as to a particular sentence], a challenge for cause should be granted. Yet, if after subsequent questioning the juror exhibits the ability to disregard previous views and make a decision based on the evidence presented at trial, the challenge is properly denied. When assessing whether a challenge for cause should be granted, the trial judge must look at the juror's responses during her entire testimony, not just "correct", isolated answers, or, for that matter, "incorrect", isolated answers.
During voir dire, Mr. Payne initially answered in the affirmative when asked by the judge whether or not he would be able to apply the law as instructed. Later, the following exchange took place between the District Attorney and Mr. Payne.
Q..... In this case, the jury, if they find the defendant guilty, then will listen perhaps to additional evidence, perhaps not, then will go back and deliberate and will decide whether or not the defendant should receive the death penalty or should be sentenced to life imprisonment. Do you feel that you could carry out that part of your responsibility as a juror?
A. That's where I have a little problem with the sentencing.
Q. Okay. Tell me what the problem is that you have?

*1282 A. Well, when a personuhit's, it's with the double, with double murder when he'sthere are two people there and you made a decision to murder one
Q. Uh-huh.
A. and then you look at the other one, in that second, you've made a decision that the second oneyou've you've already had a second decision, you know? That's what, that's whatthe problem I have.
Q. I don't understand what the problem is.
A. Uh
Q. Tell me what the problem is that you have?
A. well, its'suhin guilt, you know. UhI want to use the example as a, as a hunter. Two eight point bucks come by and you know you are only supposed to kill one and you shot that eight point buck down, you know it's against the law to kill a second one, you think about it, and you still pull the trigger.
The District Attorney then questioned Mr. Payne as to whether he would have any problem voting to put the defendant to death, to which the defendant responded in the negative. The defendant's attorney then began to question Mr. Payne:
Q..... Now, what I'm asking you is the problem you had a minute ago, was it whether or not you could vote for a life sentence, when two people have been killed?
A. Yes. Uha while ago, what I meant was, not determining guilty or innocent
Q. That's what I thought.
A. getting over to the sentencing
Q. Right.
A. if it was guilty, I wouldn't have any problem with the death penalty. The reason being, because he had twoa double murder at the time.
Q. All right, there's
A. That's what
Q. two sides to the coin. One is whether you have any problems with the death penalty, but the other one is, if the evidence were that he killed the first person and then killed the second person, would you be able to consider a life sentence in those circumstances?

A. No. (emphasis added).
The defense attorney then attempted to ask substantially the same question several times, with the District Attorney objecting to the phrasing of the question each time before Mr. Payne could respond. After a recess during which the attorneys met with the judge in chambers to determine the proper phrasing of the question, the following exchange took place between the defense attorney and Mr. Payne.
Q. Mr. Payne, the question I was trying to ask you and the question I'm going to ask you now is thisand please give this your careful consideration and just tell us honestly what you thinkwhat your answer isif you're on the jury in this caseif you're picked to serve on the jury and you go through the guilt phase of the case and Allen Robertson is convicted of both counts of first degree murderuh that he's charged withand then you reach the penalty phase where you have to decide the sentence that's going to be imposed, will you automatically vote for the death penalty without regard for whether or notuhwithout regard to whatever evidence can be put on in mitigation?

A. Yes. (emphasis added).
The defense counsel then moved to challenge Mr. Payne for cause. The trial judge attempted to rehabilitate the potential juror.
Q. Mr. Payne, do you understand at during the death penalty phase that you have the option open to you at all times to vote for life imprisonment?
A. Yes.
Q. Are you telling this Court that you won't ever consider that option?
A. It depends onI ain't heard the case yet. It would depend on the situation.
* * * * * *
Q..... is there some situation that you can conceive of where you wouldn't vote for the death penalty?
A. Yes, certain situations.
* * * * * *

*1283 Q. Now, at the end of this case, if you're selected as a juror, you are going to be instructed by the Court as to what the law is and what your obligations and duties are as a juror. Do you think you can follow those instructions and perform your duties as required of you by law?
A. Yes.
Q. One of those things that is required of you by law isbecause you are not a competent juror if you would automatically impose the death penalty in any first degree murder situation; do you understand that?
A. Yes.
Q. Is that the way you feel?
A. This, this case has a certainuh being a double murder is why I have the problem.
Q. The law doesn't take into consideration whether it's a double murder or a single murder at the point that you're at right now. All you need to understand right now is that you areyou will be required by law to follow the instructions given to you by this Court.
A. Yes, I would.
The trial judge then denied the challenge for cause, with defense counsel objecting. Defense counsel then questioned Mr. Payne again regarding his "problem."
Q. Mr. Payne, tell me what you mean when you say you have a problem with this case because it's a double murder?
A. I understand the choice I have in sentencing and in pleading the case. Uhbut you're treatingyou're trying this case as one casea double murderand that's where, that's where I have my, my, my opinion on sentence.
Q. And what is your opinion?
The District Attorney again objected before Mr. Payne could respond, with the trial judge sustaining the objection.
Based on a reading of the entire voir dire of Mr. Payne, it is absolutely clear that Mr. Payne, if chosen to serve, would have automatically voted to impose the death penalty because of the "double murder" nature of this case. Mr. Payne was not impartial as to the sentence to be imposed in this case, nor was he able to accept the law as given him by the court as he clearly stated several times that he would not be able to consider mitigating circumstances and other evidence presented in the penalty phase. The trial judge committed reversible error in failing to grant the defendant's challenge for cause of Mr. Payne.
The trial judge apparently believed Mr. Payne had been properly rehabilitated by his statements that he could conceive of certain situations where he would vote for life imprisonment rather than for the death penalty. However, it was clear that Mr. Payne would automatically vote for the death penalty in the case of a double murder. That a prospective juror can conceive of certain situations where he might vote for life imprisonment rather that for death is inconsequential where that same juror has clearly stated he could only vote for the death penalty in the case before him.
In State v. Watson, 449 So.2d 1321, 1330 (La.1984), this court was faced with an analogous situation wherein the trial court granted the state's challenge for cause on the basis that the potential juror would not consider imposing the death penalty in the case before her. The juror had answered that she did not believe she could consider the death penalty in the specific case involving the murder of a girl who had been raped twice and robbed, the exact factual scenario of the case before her. On appeal, the defendant argued that the challenge for cause should have been denied because the juror had never said that she would automatically vote against the death penalty in every case. In affirming the trial court's granting of the challenge for cause, this court stated:
The Fifth Circuit in [Williams v. Maggio, 679 F.2d 381 (5th Cir., 1982) ] declared:
"Witherspoon [v. State of Ill., 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) ] and its progeny do not mandate that a prospective juror aver that she would refuse to consider the death penalty in every case that could possible (sic) arise. If she knows enough about the case to know that she could not consider imposition of the death penalty *1284 regardless of what evidence might be presented, she must be excused. Ms. Brou's responses demonstrate that she would be unwilling to consider the death penalty where the crime charged was murder committed during a robbery. She does leave open the possibility that she would consider this penalty in a more `hideous' case. Her unwillingness to do so here, however, is firm." 679 F.2d at 385-386.
The rationale of Williams had previously been adopted by this court. State v. Lafleur, 398 So.2d 1074 (La.1981) involved the aggravating circumstance that the crime was committed in an atrocious, cruel or heinous manner. During voir dire, prospective jurors were asked whether they could return the death penalty if they were convinced beyond a reasonable doubt that the crime was committed in such a manner. Lafleur held: "This is a legitimate question inasmuch as a juror who could not recommend the death penalty under such circumstances is subject to a challenge for cause by the state." 398 So.2d at 1078.[5]
Likewise, a potential juror who indicates that he will not consider a life sentence and that he will automatically vote for the death penalty under the factual circumstances of the case before him is subject to a challenge for cause by the defendant. It is irrelevant that the potential juror can conceive of different factual situations where he might consider voting for a life sentence where his unwillingness to consider such a sentence in the case before him is clear.

CONCLUSION
The potential juror indicated his belief that the death penalty is the only appropriate punishment for a first degree murder case involving a double murder. When a juror holding such an opinion is not excused for cause, and the defense exhausts its peremptory challenges, as occurred in this case, there is reversible trial court error. Therefore, the conviction of Allen Robertson, Jr. is reversed and vacated.
REVERSED: CONVICTION VACATED: REMANDED FOR NEW TRIAL.
NOTES
[*] Hall, J., not on panel. See Rule IV, Part 2, § 3.
[1] The Breedlove court based this conclusion on an interpretation of former Article 353 of the Code of Criminal Procedure which provided:

No defendant can complain of any ruling sustaining or refusing to sustain a challenge for cause, unless his peremptory challenges shall have been exhausted before the completion of the panel; moreover, the erroneous allowance of challenges for cause affords the defendant no ground of complaint, unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an obnoxious juror.
[2] Article 800 at that time stated in pertinent part:

A defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel.
[3] The defendant no longer had to make the additional showing, previously required under Breedlove, that he had been forced to accept an obnoxious juror.
[4] See, e.g., Lee, supra, 559 So.2d at 1316-17 ("In this case, the defendant did exercise all of his peremptory challenges prior to the selection of the entire jury; therefore, he has the right to complain of any alleged errors committed by the trial judge. Any ruling by the trial judge in erroneously denying a challenge for cause would reduce the number of peremptory challenges available to the defendant. Such error, if shown, denies the defendant a `substantial constitutional and statutory right' and merits reversal.").
[5] See also Comeaux, supra, 514 So.2d at 94.