789 So.2d 1280 (2001)
STATE of Louisiana
v.
Lawrence J. JACOBS, Jr.
No. 99-KA-1659.
Supreme Court of Louisiana.
June 29, 2001.
*1282 G. Benjamin Cohen, Clive Adrian Stafford-Smith, New Orleans, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Paul D Connick, Jr., District Attorney, Terry M. Boudreaux, Gretna, Donald A. Rowan, Jr., Caren M Morgan, New Orleans, Counsel for Respondent.
Gabriella Celeste, Counsel for Juvenile Justice Project of Louisiana (Amicus Curiae).
Ilona Picou, Counsel for Southern Juvenile Defender Center (Amicus Curiae).
Mark Soler, Counsel for Youth Law Center (Amicus Curiae).
KIMBALL, Judge.[*]
This is a direct appeal from a conviction of first degree murder and a sentence of death. La. Const. art. V, § 5(D). The defendant's appeal is based on a total of twenty-seven assignments of error. Because the trial judge committed reversible error by denying the defense challenges for cause against potential jurors Dunham and Dyer, we now reverse the defendant's conviction and sentence of death and remand for a new trial.

FACTS AND PROCEDURAL HISTORY
On the morning of October 31, 1996, forty-five-year-old Nelson Beaugh and his seventy-year-old mother, Della Beaugh, were fatally shot in Nelson's home in Marrero, Louisiana. Nelson's mother-in-law discovered their bodies when she arrived to clean the house that same morning. Both victims had been shot in the head.
An investigation led to the issuance of an arrest warrant for the defendant, Lawrence J. Jacobs, Jr., who was sixteen years old at the time and a suspect in two burglaries that had been reported earlier that same week in a neighborhood adjoining Nelson Beaugh's. When the police contacted the defendant's father, Lawrence Jacobs, Sr., Mr. Jacobs notified the case agent, Lieutenant Snow, that his son had run away from home two months earlier, but that he would assist in locating him. Thereafter, Mr. Jacobs discovered that the defendant had fled to Jackson, Mississippi, where they had relatives. Mr. Jacobs picked his son up in Jackson, drove him back to Louisiana, and surrendered him to Lt. Snow.
On December 5, 1996, a Jefferson Parish grand jury indicted the defendant for the first degree murders of Della and Nelson Beaugh. Trial began on April 17, 1998, and the jury returned a verdict of guilty as charged.[1] At the conclusion of the penalty phase, the jury returned a sentence of death, finding four aggravating *1283 circumstances: (1) that the offender was engaged in the perpetration or attempted perpetration of an aggravated burglary; (2) that the offender knowingly created a risk of death or great bodily harm to more than one person; (3) that the offense was committed in an especially heinous, atrocious or cruel manner; and (4) that the victim was sixty-five years of age or older. La.Code Crim. Proc. art. 905.4(A)(1), (4), (7), (10). The defendant appeals his conviction and death sentence on the basis of twenty-seven assignments of error. For the following reasons, we find that the defendant has presented a valid argument in his third assignment of error, with respect to the trial court's denial of the defense challenges for cause as to potential jurors Dyer and Dunham, requiring a reversal of his conviction and sentence.[2]

LAW AND DISCUSSION
In his third assignment of error, the defendant contends that it was error for the trial court to deny the defense challenges for cause as to three prospective jurors, Mssrs. Dyer, Dunham, and Gerhardt. We agree that the trial judge erred as to jurors Dyer and Dunham.[3]
In State v. Robertson, 92-2660, pp. 2-3 (La.1/14/94), 630 So.2d 1278, 1280-81, we discussed the evolution of Louisiana's well-settled jurisprudential rule that prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all of his peremptory challenges. In that case, we noted that the Louisiana Code of Criminal Procedure (Acts 1966, No. 310) became effective January 1, 1967, and that Article 800 of the Code was intended, as the Official *1284 Revision Comment notes, to change the law by legislatively overruling this court's earlier decision in State v. Breedlove, 199 La. 965, 7 So.2d 221 (1942). Robertson, 630 So.2d at 1280. In Breedlove, this court had held that there were three requirements for a denial of a defendant's challenge for cause to constitute reversible error: (1) an erroneous ruling by the trial judge refusing to sustain the defendant's challenge; (2) exhaustion of all of the defendant's peremptory challenges; and (3) the defendant was forced to accept an obnoxious juror, either the one that should have been excused for cause, or, if the juror was peremptorily challenged, a subsequent juror that defendant would have peremptorily challenged but for the fact that he had already exhausted his peremptory challenges. Breedlove, 7 So.2d at 226-227. In enacting Article 800, the legislature overruled Breedlove with regard to the third, "obnoxious juror" requirement. See Robertson, 630 So.2d at 1280. Thereafter, a defendant need only show two things to constitute reversible error: (1) that the trial judge erred in refusing to sustain a challenge for cause by the defendant; and (2) that the defendant exhausted all of his peremptory challenges. Id. at 1281.
The reasoning for eliminating the "obnoxious juror" rule is that Louisiana, unlike many other states, constitutionally provides that the accused has a right to challenge jurors peremptorily, with the number of challenges being fixed by law. La. Const. art. 1, § 17. Article 799 of the Code of Criminal Procedure provides that in trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges. Therefore, an erroneous ruling of a trial judge which deprives a defendant of one of his peremptory challenges constitutes a substantial violation of a constitutional and statutory right requiring reversal of his conviction and sentence. La.Code Crim. Proc. art. 921; Robertson, 630 So.2d at 1280-81. See also State v. Ross, 623 So.2d 643, 644 (La.1993); State v. Bourque, 622 So.2d 198, 225 (La.1993); State v. Lee, 559 So.2d 1310, 1317 (La.1990); State v. Comeaux, 514 So.2d 84, 93 (La.1987); State v. Brown, 496 So.2d 261, 263-64 (La. 1986).
The defendant in the present case exhausted all of his peremptory challenges. Thus, at issue is whether the defendant's challenges for cause as to jurors Dyer and Dunham, based on their apparent predisposition to automatically impose the death penalty, should have been sustained by the trial judge. A trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. Robertson, 630 So.2d at 1281 (citing State v. Knighton, 436 So.2d 1141, 1148 (La.1983)). Under La.Code Crim. Proc. art. 797(2), a defendant may challenge a juror for cause on the ground that the juror is not impartial, "whatever the cause of his partiality." Additionally, La.Code Crim. Proc. art. 797(4) provides a defendant may challenge a juror for cause on the ground that "[t]he juror will not accept the law as given to him by the court." A refusal by a trial judge to excuse a prospective juror on the ground that he is not impartial is not an abuse of discretion where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. Robertson, 630 So.2d at 1281.
The proper standard for determining when a prospective juror should be excluded for cause because of his views on capital punishment is whether the juror's views prevent, or substantially impair the performance of his duties as a juror. *1285 Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (holding that a prospective juror who would vote automatically for a life sentence is properly excluded). See also Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); State v. Sullivan, 596 So.2d 177 (La.1992), rev'd. on other grounds sub nom. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In a "reverse-Witherspoon" context, the basis of the exclusion is that a prospective juror is unable to consider a life sentence under the facts of the particular case and would automatically vote for the death penalty. State v. Divers, 94-0756, p. 8 (La.9/5/96), 681 So.2d 320, 324 n. 5 (citing Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992)). Jurors who cannot consider both a life and death sentence are "not impartial," and cannot "accept the law as given ... by the court." La.Code Crim. Proc. art. 797(2), (4); State v. Maxie, 93-2158, p. 16 (La.4/10/95), 653 So.2d 526, 534-35. A trial court's failure to disqualify a prospective juror who is unable to consider both a life and death sentence as penalties constitutes reversible error. Divers, 681 So.2d at 324-27; Maxie, 653 So.2d at 537-38; Robertson, 630 So.2d at 1283-84.
To summarize, when a juror expresses a predisposition as to a particular sentence, a challenge for cause should be granted. Robertson, 630 So.2d at 1283-84; State v. Lee, 559 So.2d 1310, 1318 (La. 1990). Yet, if after subsequent questioning, or rehabilitation, the juror exhibits the ability to disregard that predisposition and make a decision based on the evidence presented at the penalty phase of the trial, the challenge is properly denied. Robertson, 630 So.2d at 1281; Lee, 559 So.2d at 1318.
The instant case presents us with a unique situation, in that prospective jurors Dyer and Dunham, who were both questioned in the second panel of the venire, were not subject to any manner of rehabilitation whatsoever after they expressed a predisposition to sentence the defendant to death, if found guilty. In fact, not only was the questioning of jurors Dyer and Dunham unusual because there was no effort to rehabilitate them by anyone, but the voir dire of the entire second panel of prospective jurors as a whole was remarkable in that the record demonstrates a complete absence of any meaningful discussion by the state, defense counsel, or the trial judge of the standard order of a capital trial or the role mitigating circumstances play in Louisiana's bifurcated capital sentencing procedure. Neither the trial court nor any of the attorneys informed the panel of the nature of the bifurcated trial or even what those jurors would be called upon to do in the capital sentencing hearing.
With respect to jurors Dyer and Dunham specifically, both jurors were first asked only one question by the prosecutor: whether they could impose the death penalty if the defendant was found guilty of first degree murder. Both prospective jurors responded affirmatively. Defense counsel subsequently probed a little further with Mr. Dyer:
DEFENSE: Let me ask you this, Mr. Dyer, in a situation where someone is absolutely, clearly guilty of the crime of first degree murder, I mean they'veall the elements have been met, everything is there, I mean, you have no doubt in your mind that this man is clearly guilty of first degree murder, do you feel that the death penalty is the only appropriate penalty?
MR. DYER: Yes, I do.
DEFENSE: Let me ask you this, do you subscribe to the concept of an eye for an eye?

*1286 MR. DYER: Yes.
DEFENSE: Okay. In the situation that we're talking about here, there is absolutely no heat of passion, there is no self evidence issue, none of that stuff is going on, no insanity pleas, no anything, so under those particular circumstances, you feel that the only appropriate sentence is death, is that right?
MR. DYER: Yes.
Following that exchange, the ensuing dialogue between defense counsel, jurors Dunham and Dyer, and a third prospective juror conclusively demonstrates that jurors Dyer and Dunham were predisposed to impose the death penalty:
DEFENSE: Mr. Clements, under those circumstancesI'm sorry that's Mr. Dunham. Everything is clear, the case is over with, I mean, you've heard it all, no insanity, no self defense, there's no question in your mind that this man committed first degree murder. Is death the only appropriate sentence in this particular case?
MR. DUNHAM: I believe so.
DEFENSE: You believe so?
MR. DUNHAM: Right.
DEFENSE: Mr. Clements, how do you feel about this?
JUROR: Not necessarily. To me life imprisonment without parole is pretty much death, kind of close to the same. Well, to answer that question, not necessarily.
DEFENSE: Not necessarily. But Mr. Dunham, your feel like, hey, it's absolutely, no question about it, he's got to die, right?
MR. DUNHAM: If he's guilty, yeah.
DEFENSE: He's got to die. Mr. Dyer, you feel the same way, right?
MR. DYER: Yes.
Neither the state, nor the trial judge, inquired further or attempted to rehabilitate jurors Dyer and Dunham. Nor did anyone explain to these prospective jurors the law regarding mitigation and the possible imposition of a life sentence.
In fact, the prosecutor agreed on the record that jurors Dyer and Dunham had not demonstrated an ability to be impartial with regards to the death penalty. During the bench conference, when defense counsel challenged Mr. Dyer, Ms. Pisciotta, and Mr. Dunham, stating that all three jurors had said that the only verdict they could vote for was death, the prosecutor objected, but stated only that Ms. Pisciotta "did not say that." In fact, the prosecutor specifically argued that, "[s]he didn't say that, the other two said that, she never said that," thereby conceding that jurors Dyer and Dunham had both stated that they could only vote for the death penalty. The prosecutor argued that the jurors' responses were due to defense counsel's failure to ask them proper questions regarding the consideration of mitigating evidence and the possibility of a life sentence. The prosecutor and defense counsel continued to argue back and forth over the propriety of the questions posed to jurors Dyer and Dunham until the trial judge intervened, ruling that, "[i]t's not really clear, so I'm going to deny those challenges for cause."
Because neither the attorneys nor the trial judge attempted to question jurors Dyer and Dunham further or to explain what the law would require of them as jurors in a capital case, there is a complete absence of any evidence in the record indicating that either juror would have been able to consider mitigating evidence and the imposition of a life sentence, as required by law and their duties and oaths as jurors. Not only are we disturbed by the trial judge's clear error in denying the challenges based on jurors Dyer's and Dunham's responses to defense counsel's *1287 questioning, but as disturbing, and of particular concern to us, is the trial judge's failure to carefully supervise the death qualification portion of voir dire, highlighted in this instance by the proceedings involving jurors Dyer and Dunham.
Recently, in State v. Miller, 99-0192, p. 4 (La.9/6/00), 776 So.2d 396, 400, we noted that:
Perhaps the most difficult tasks for the trial judge in ensuring the impartiality of a capital juror are handling the death qualification portion of the voir dire and ruling on challenges for cause to a prospective juror who has expressed his or her views toward the death penalty.
In that case, we discussed the extreme difficulty trial judges often face when presented with challenges for cause on reverse-Witherspoon grounds and required to determine whether it has been demonstrated that a prospective juror's bias in favor of the death penalty would substantially impair the juror's ability to follow the law as instructed. Id. at 405. We recognized that, because of the difficulty often involved in making that determination, many Louisiana trial judges choose to question prospective jurors themselves as to the jurors' understanding of the role mitigating evidence will play in the sentencing hearing and whether the jurors will be able to consider both a life and a death sentence. Id. at 403-04. We suggested that, through personal questioning, the trial judge is better able to ensure that the jurors comprehend the nature and order of the proceedings, as well as their legal duties as jurors, and that they will be able to impartially decide the case and impose a penalty. Id. However, in Miller, we did not find that the trial judge erred by choosing not to question the jurors himself, because there was a thorough voir dire of the challenged jurors by both defense counsel and the prosecutor, the trial judge made thoughtful rulings throughout the death qualification, and the trial judge gave detailed reasons for his denial of the defendant's challenges for cause.
Finally, the court in Miller recognized that, because the trial judge's task of "line-drawing" with respect to challenges for cause of prospective jurors who give contradictory or equivocal responses during death qualification is complicated, reviewing courts usually accord great deference to the trial judge's determination, which necessarily is based in part on the judge's personal observations of the jurors during questioning. 776 So.2d at 405-06 (citing State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683; State v. Lucky, 96-1687 (La.4/13/99), 755 So.2d 845). Today, we again acknowledge the broad discretion usually accorded a trial court's determination of a challenge for cause during voir dire. However, in contrast to Miller, the instant case presents us with a troubling situation, where the presiding trial judge did not make thoughtful determinations of challenges for cause, but, instead, was apparently inattentive during periods of the critical death qualification portion of voir dire and, as a result, failed to perform his constitutionally-mandated responsibility of removing prospective jurors who are not impartial. See Morgan v. Illinois, 504 U.S. 719, 729-30, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492 (1992) (quoting Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981)) (discussing the trial judge's responsibility to ensure that the defendant is afforded an impartial jury by removing prospective jurors who will not be able to follow the court's instructions in the penalty phase of a capital trial). "Because the obligation to impanel an impartial jury lies in the first instance with the trial judge," Rosales-Lopez, 451 U.S. at 189, 101 S.Ct. at 1634, the trial judge has an affirmative duty to determine whether a challenged juror's views regarding the death penalty would *1288 prevent or substantially impair the performance of that juror's duties. See Witt, 469 U.S. at 424, 105 S.Ct. at 851-52. In order to fulfill that obligation, a trial judge must carefully supervise voir dire, exercise substantial control over the jury selection process, and directly participate in the questioning of the prospective jurors when necessary. See Morgan, 504 U.S. at 729, 112 S.Ct. at 2230; Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 623-24, 111 S.Ct. 2077, 2084-85, 114 L.Ed.2d 660 (1991); Miller, 776 So.2d at 403-04.
It is the trial judge who is ultimately responsible for making certain that all prospective jurors understand the fundamental elements of a capital trial and their duties as jurors in a capital sentencing hearing. The trial judge has a constitutional obligation to ensure that a fair and impartial jury is empaneled, and that obligation can only be fulfilled if the prospective jurors are subject to a meaningful voir dire and well informed of what the law requires of them. Thus, when the trial judge in the instant case was presented with the challenges for cause as to jurors Dyer and Dunham, who unequivocally stated on the record that they could only impose the death sentence, the judge had three viable options: (1) he could have inquired of the prosecutor whether she wanted to attempt to rehabilitate the jurors; (2) he could have undertaken questioning of the jurors himself in order to clarify their position on the death penalty and whether they understood that the law would require them to consider mitigating evidence and a life sentence; or, (3) he could have excused the jurors for cause. Instead, the trial judge denied the challenges, a decision which appears to have been the consequence of some confusion with respect to the scope of the voir dire of jurors Dyer and Dunham.
While the jurors might possibly have been rehabilitated upon further questioning by the prosecutor, they were not. See State v. Sugar, 408 So.2d 1329, 1331 (La. 1982) (finding reversible error where trial court erroneously denied defendant's challenge for cause of juror who was not rehabilitated after giving prejudicial answers and defendant exhausted all peremptory challenges); State v. Cross, 93-1189, p. 8 (La.6/30/95), 658 So.2d 683, 687 (finding that defendant's challenge for cause should have been granted, where there was no attempt to rehabilitate the juror subsequent to his remarks expressing an opinion seemingly prejudicial to the defense). Without any indication in the record of jurors Dyer's and Dunham's impartiality with respect to the penalty phase of the trial, it was error for the trial court to deny the defendant's challenges for cause. Because the defendant exhausted his peremptory challenges, the trial court's error warrants a reversal of the defendant's conviction and sentence. Robertson, 630 So.2d at 1280-81; Ross, 623 So.2d at 644; Bourque, 622 So.2d at 225; Lee, 559 So.2d at 1317; Comeaux, 514 So.2d at 93; Brown, 496 So.2d at 263-64.

CONCLUSION
For the above assigned reasons, the trial court erred by not sustaining the defendant's challenges for cause as to jurors Dyer and Dunham, based on their predisposition to impose the death penalty. Because the defendant subsequently exhausted his peremptory challenges, prejudice is presumed. The trial court's denial of the defendant's challenges constitutes reversible error.

DECREE
The defendant's conviction and sentence are reversed. The case is remanded to the trial court for a new trial.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision; Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson.
[1] A separate jury convicted co-defendant, Roy Bridgewater, on October 30, 1998, for the first degree murders of Della and Nelson Beaugh and returned a death sentence on the following day. Mr. Bridgewater's appeal is presently pending before this court.
[2] Our finding renders the defendant's remaining assignments of error moot. However, we note that, while the trial court's erroneous denial of the defendant's challenges for cause as to jurors Dunham and Dyer presents us with the most blatant grounds for reversing the defendant's conviction and sentence, the defendant's fourth assignment of error, with respect to the prosecutor's alleged racial discrimination in the selection of jurors in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), also appears to raise serious questions regarding the propriety of the jury selection process in this case. Though a discussion of the merits of the defendant's Batson challenges is pretermitted at this time, we take this opportunity to remind the trial court of its unique and integral role in the dynamics of voir dire and to caution it to be especially sensitive to the alleged racially discriminatory use of peremptory challenges. See generally State v. Myers, 99-1803, pp. 5-6 (La.4/11/00), 761 So.2d 498, 502. We reiterate our findings in Myers regarding the importance of the trial judge's role when Batson challenges are made:

The issue of purposeful racial discrimination in the use of peremptory challenges is a matter of utmost seriousness affecting not only the trial itself, but the perceived fairness of the judicial system as a whole. The trial judge observes first-hand the demeanor of the attorneys and venirepersons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold record.
Id. We, again, emphasize that it is fundamental that a trial court properly address Batson challenges when made, by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race-neutral reasons for the strikes. It is essential that the trial judge not only control the proceedings, but that he guide the attorneys through the necessary steps involved in a Batson challenge, in order to ensure the integrity and fairness of the jury selection process.
[3] Mr. Gerhardt was challenged for cause because both he and his family had been victims of violent crime, and he expressed his concern that those experiences might affect his ability to be impartial. However, when questioned further, Mr. Gerhardt answered that he is a fair person, that he could make a decision based on the evidence presented at trial, and that he had no preconceived ideas regarding the defendant's guilt or innocence. Considering Mr. Gerhardt's voir dire as a whole, while it was admittedly a close call, we do not find that the trial judge abused his discretion in denying the challenge.