JOHNSON, C.J.,
dissents and assigns reasons.
Iil respectfully dissent. I disagree with the majority’s finding that the district court committed reversible error in failing to excuse juror Roy Johnson for cause. After reviewing the voir dire transcripts, I do not find that Mr. Johnson’s partiality is clear cut as found by the majority opinion, and I would affirm the trial court’s ruling on this issue.
The majority opinion selectively reaches a finding of partiality by inferring that Mr. Johnson would not consider intoxication as a mitigating circumstance. However, a straightforward reading of the voir dire transcript, particularly the exchanges between Mr. Johnson and defense counsel, militate in favor of a conclusion that Mr. Johnson would consider intoxication as a mitigating circumstance, but would not afford that circumstance much weight. Reading all of Mr. Johnson’s statements together, as this Court is required, the whole of his answers indicate that he would follow the law. Importantly, defense counsel never asked “will you consider intoxication as a mitigating circumstance?” Rather, defense counsel asked “is what you are saying then that [intoxication is] not going to be a mitigating circumstance for youT’ .in an attempt to find a juror that would apply the law in a favorable manner — or weigh the law in a favorable manner — for the defendant. The entire colloquy indicates awareness that intoxication need be ^considered, but that Mr. Johnson simply was not buying what defense counsel was selling. Thus, I agree with the trial court that Mr. Johnson’s adamancy that intoxication would not preclude him from giving a death sentence spoke to the weight he afforded it as a mitigating circumstance as opposed to a failure to consider it as a mitigating circumstance altogether. My reading of the voir dire transcript is fully support by prior jurisprudence from this Court. This Court’s holding in State v. Taylor, 1999-1311 (La.1/17/01); 781 So.2d 1205 illustrates the distinction between a juror’s refusal to consider a mitigating circumstance versus a juror’s inclination to weigh a mitigating circumstance unfavorably in the eyes of the defendant. See also State v. Miller, 99-0192 (La.9/6/00), p. 8-9; 776 So.2d 396, 402-03 *200 (“While a juror has the discretion to assign whatever weight the juror deems appropriate to any aggravating and mitigating circumstance established by the evidence, the juror must be willing to consider mitigating evidence relevant to the character and propensities of the defendant ... and must be willing to fairly consider a life sentence.”) (emphasis original).
In Taylor, the defendant was found guilty of first degree murder and was sentenced to death. Taylor, 1999-1311; 781 So.2d 1205. The defendant argued that his challenges for cause to several jurors were improperly denied because the jurors in question were unable to consider a life sentence. Id. Defendant argued that juror Carol Funk indicated that she would be unwilling to consider a life sentence for intentional murder. Id. When examined by the state, Funk stated “Well, if they proved that something like that really happened — somebody really had control or you know, alcohol, I really couldn’t say that. If it was alcohol, he’d really have to be completely out of his mind with alcohol to put that as something causing him to do it.” Taylor, 1999-1311, p. 8-9; 781 So.2d 1205, 1214-15. This court commented, “[t]he totality of Ms. Funk’s colloquy states that she would be |3able to consider both mitigating and aggravating circumstances in deciding the appropriate penalty. When she was directly asked if she would automatically vote for the death penalty, she stated she would have to look at the whole circumstances.” Id. This court further explained, “... prospective jurors in capital cases who expressly agree to consider both death and life sentences and to consider any mitigating evidence are properly not excluded for cause.” Id. citing Miller, 99-0192; 776 So.2d 396 (emphasis added).
In this case, defense counsel, referring to intoxication as a mitigating circumstance, stated “And the law says you should listen to that.” Mr. Johnson replied, “Okay, then I would listen.” Later, when Defense counsel explains to Mr. Johnson that “the bottom line is, you have a choice. Even if you find five aggravating circumstances, you can still vote for life. Does that bother you at all?” he replied, “No, it doesn’t bother me.” In my view, it is clear that Mr. Johnson acknowledged he could consider both death and life sentences, and that a life sentence would be appropriate if he were to afford weight to any of the mitigating circumstances presented by the defense.
The last portion of Taylor is particularly instructive, wherein this Court discusses the impartiality of one juror who stated that a violent upbringing “wouldn’t mean much to him” as a mitigating circumstance and another who said that “she would have trouble considering [a violent upbringing] because [she] had been there.” Taylor, 99-1311, p. 12; 781 So.2d 1205, 1217-18. Both jurors maintained that they would consider a life sentence. This Court held:
‘There is no statutory or legal presumption in favor of any penalty or any mitigating circumstance, and individual jurors often, if not always, have their own inchoate or unarticulated predispositions. Such personal predisposition do not offend the law, provided that they do not ‘substantially impair’ the juror’s duty to follow the law. Not every predisposition or leaning in any direction rises to the level of substantial impairment. Significantly, |4⅞ is in the determination of substantial impairment that the tnal judge’s broad discretion plays the critical role.’
Id. citing State v. Lucky, 96-1687, p. 7 (La.4/13/99); 755 So.2d 845, 850 (emphasis added).
The majority relies heavily on State v. Maxie, 93-2158, p. 16-23 (La.4/10/95); 653 *201 So.2d 526, 535-38 a case that is easily distinguishable. Unlike Mr. Johnson, the challenged juror in Maxie, Ms. Rains, unequivocally stated that she would not consider a life sentence at all. Defense counsel asked, “Do you feel like [the death penalty] should automatically be imposed if [defendant] is convicted of first degree murder?” to which Ms. Rains responded, ‘Tes.” Maxie, 93-2158, p. 18; 653 So.2d 526, 535. Later, she stated, “If it is proven to me that he is guilty of this crime then you know I would vote for the death penalty.” Id. After some rehabilitation, defense counsel again askéd, “But do you feel like you have got to [give the death penalty] if rape-murder is proven?” to which Ms. Rains responded, ‘Tes.” Maxie, 93-2158, p. 20; 653 So.2d 526, 536. Defense counsel then stated “Bearing in mind you know what the Judge has said about looking at — ” to which she said, “Right.” Id. Defense counsel prodded Ms. Rains asking, “... The question remains, what is your present disposition in terms of imposing the death penalty if [defendant] is convicted of first degree rape-murderV’ to which she replied, “Death penalty.” Max-ie, 93-2158, p. 21; 653 So.2d 526, 537 (emphasis original). Defense counsel questioned Ms. Rains one last time:
Defense: But you feel right now that the death penalty ought to be imposed once the crime guilt—

Juror Rains: Right.

Defense: —gets established.

Juror Rains: Once the crime guilt is established.

| ¿Id. (emphasis original). After comparing voir dire questions and answers, I cannot conclude, as the majority does, that the facts of this case are close to those in Maxie. The voir dire in Maxie demonstrated one inescapable conclusion, while reasonable minds can differ on the partiality of Mr. Johnson.
This Court has also discussed this distinction in State v. Robertson, 92-2660 (La.1/14/94); 630 So.2d 1278, 1282 (where challenge for cause was improperly denied when defense counsel asked “will you automatically vote for the death penalty with regard for whether or not — uh—without regard to whatever can be put on in mitigation ” to which juror stated “yes ”) (emphasis original), State v. Odenbaugh, 10-00268, p. 32 (La.12/6/11); 82 So.3d 215, 241 (where challenge for cause was properly denied where juror “did not state he would automatically impose the death penalty” if defendant was found guilty on both charges of first degree murder but instead, repeatedly stated he thought the death penalty would be “justified” when more than one person is killed) (emphasis added), and State v. Carmouche, 01-0405, p. 16 (La.5/14/02); 872 S.2d 1020, 1033 (where this Court recognized that a juror’s “indication that death is the only appropriate penalty for double murder” was similar to statements made by the juror in Robertson, but that in Robertson, the juror said he would “automatically vote to impo.se the death penalty regardless of any mitigating evidence” whereas this juror indicated “he would not vote for the death penalty if he did not believe it was merited” and that “he would consider both the good and bad circumstances” in making his sentencing decision).
Moreover, the majority invokes Maxie for the proposition that without rehabilitation, a juror must be struck for cause when his final statement hints at impartiality. This is a mischaracterization of Maxie. In that case, this Court considered that Ms. Raines “state[d] several times that the death penalty was the only appropriate punishment in this first degree ‘rape-murder’ case” and that her ^partiality “was shown throughout the entire examination.” Maxie, 93-2158, p. 23; 653 So.2d 526, 537- *202 38. The Maxie Court looked at the entire colloquy, stating “On the whole, Ms. Rains’ responses indicated that she was predisposed to vote for the death penalty because of the ‘rape murder’ nature of this case.” Id. (emphasis added). In my view, the majority improperly focused on the final portion of Mr. Johnson’s statements to reach its conclusion.
This court has clearly differentiated between the refusal to consider a mitigating circumstance and an inclination to weigh a mitigating circumstance one way. Taylor, 99-1311; 781 So.2d 1205. Here, the majority selectively parses out statements in a colloquy that, viewed in the aggregate, allows a reasonable person to conclude that Mr. Johnson was: (1) aware that he could vote for a life sentence; (2) understood the availability of mitigating circumstances to vote for a life sentence; and (3) understood that intoxication was a mitigating circumstance recognized by the law but (4) afforded it little weight.
In capital cases, jurors must be willing to consider both life and death sentences in addition to any aggravating and mitigating circumstances raised in the case. Id. Ultimately, “the party seeking to exclude the juror has the burden to demonstrate, through questioning, that the juror lacks impartiality ...” Taylor, 99-1311, p. 13; 781 So.2d 1205, 1217. I do not find the defense met this burden.
This Court has instructed that “a reviewing court should accord great deference to the trial judge’s determination and should not attempt to reconstruct the voir dire by microscopic dissection of transcript in search of magic words of phrases that automatically signify juror’s qualification or disqualification.” Taylor, 99-1311, p. 11; 781 So.2d 1205, 1217 citing with approval Miller, 99-0192; 776 So.2d 396. This Court is required to refrain from scrutinizing trial transcripts to distill otherwise ambiguous juror statements. “Likewise, a prospective juror who indicates his or her personal preference for the death penalty need not be stricken |7for cause. Not every predisposition or leaning in any direction rises to the level of substantial impairment.” Taylor, 99-1311, p. 11; 781 So.2d 1205, 1217 citing Lucky, 96-1687, p. 6; 755 So.2d 845, 850 (internal citations omitted).
Thus, in my view, we are compelled to respect the preferences of Mr. Johnson relating to the issue of intoxication as a mitigating circumstance and in turn, respect the determination of the trial court. Voir dire is a process inherently saturated with impressions and non-verbal cues that do not reach the pages of trial transcripts. “The broad scope of voir dire sometimes produces answers from a lay person that appear to be inconsistent, and the delicacy of this situation is an important factor underlying the rule that requires a reviewing court to accord substantial deference to the trial judge’s rulings on challenges for cause relating to a juror’s views of the death penalty.” Miller, 99-0192, p. 10; 776 So.2d 396, 403. To reach consistent outcomes, this Court’s best avenue is to steadfastly adhere to the standard review we have set forth in these cases. The majority undercuts the deference this Court has shown in similar cases and erroneously finds reversible error. Finding the trial court did not abuse its discretion, I respectfully dissent.