PITMAN, J.
Defendant Demarcus S. Payton was convicted of aggravated rape, unauthorized entry of an inhabited dwelling and simple escape. The trial court sentenced him to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence for the conviction of aggravated rape; six years at hard labor for the conviction of unauthorized entry of an inhabited dwelling; and five years at hard labor for the conviction of simple escape. The trial court ordered that the sentences for aggravated rape and unauthorized entry of an inhabited dwelling be served concurrently with each other and that the sentence for simple escape be served consecutively. For the following reasons, we affirm Defendant's convictions and sentences, but order the minute entry amended and remand for compliance with La. R.S. 15:543.
FACTS
On July 17, 2014, Defendant was indicted for aggravated rape, in violation of La. R.S. 14:42 ; unauthorized entry of an inhabited dwelling, in violation of La. R.S. 14:62.3 ; and simple escape, in violation of La. R.S. 14:110(A)(1). The indictment alleged that on or about June 16, 2014, Defendant committed the rape of C.C., made entry without authorization into the inhabited dwelling and home of C.C. and intentionally departed from a place of legal confinement and lawful custody of a law enforcement officer. On August 5, 2014, Defendant entered pleas of not guilty to the charges.
A jury trial commenced on February 29, 2016. During jury selection, the trial court denied four challenges for cause asserted by Defendant.
C.C. testified that in the early morning of June 16, 2014, a man approached her while she was sitting on her front porch. She stated that she had never seen this man before and identified him in open court as Defendant. She further stated that he made inappropriate sexual comments to her, which frightened her. She went inside her house, locked the exterior doors, grabbed a knife and called the Claiborne Parish Sheriff's Office. Chief Anthony Smith of the Haynesville Police Department responded to her home. After Chief Smith left in search of Defendant, C.C.'s ex-boyfriend came to her house. She stated that they observed Defendant standing in the street in front of her house; and, at 2:22 a.m., she informed Chief Smith by text. She noted that her ex-boyfriend left her house at approximately 5:00 a.m. and then she went to sleep on her couch.
C.C. testified that she was awakened by a man with his hand over her mouth and a *209 knife to her throat. She feared for her life and the lives of her children, who were home and asleep at the time. She stated that the man forced her to perform oral sex on him, that he performed oral sex on her and that he raped her vaginally and anally. The man brandished a knife at her, struck her in the forehead and threatened to kill her and her children. She testified that the man stopped raping her and left her home when one of her children woke up at approximately 7:00 a.m.
C.C. further testified that she went to the hospital and underwent an examination. Morgan Matlock, a forensic nurse examiner and certified sexual assault nurse examiner, testified that she examined C.C. and collected swabs from her body and genitalia. Candace Jones, a forensic DNA analyst with the North Louisiana Criminalistics Laboratory, testified that DNA recovered on swabs from C.C. was consistent with a reference sample from Defendant or a male in his paternal lineage.
Officer Trent Crook of the Haynesville Police Department testified that he obtained a warrant for the arrest of Defendant on June 17, 2014. He stated that at 1:00 a.m. on June 18, 2014, he located Defendant, placed him under arrest, advised him of his rights and secured him in handcuffs. He then transported Defendant to the Haynesville Police Department. As he walked Defendant to another patrol unit to transfer him to the Claiborne Parish Detention Center, Defendant ran away. Officer Crook stated that he chased after Defendant, but was unable to catch him. Law enforcement later located Defendant at his sister's house, and he was taken into custody.
On March 3, 2016, the jury unanimously found Defendant guilty as charged on all three counts. On May 3, 2016, the trial court sentenced him to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence for the conviction of aggravated rape; six years at hard labor for the conviction of unauthorized entry of an inhabited dwelling; and five years at hard labor for the conviction of simple escape. It further ordered that the sentences for aggravated rape and unauthorized entry of an inhabited dwelling be served concurrently with each other and that the sentence for simple escape be served consecutively.
Defendant appeals.
DISCUSSION
In his sole assignment of error, Defendant argues that the trial court erred in denying challenges for cause made by Defendant, prejudicing his ability to have a fair and impartial trial. He asserts that it erroneously denied his challenges for cause as to potential jurors Patsy Ann Whitlow, Loretta Ford, Brian Edward Bogle and Robert James Heard. He contends that prejudice is presumed in this case because he exercised all 12 peremptory challenges.
The state argues that the trial court did not abuse its discretion in denying Defendant's challenges for cause. It contends that Defendant failed to assert facts to indicate that any of the contested jurors were unable to judge the case impartially based on the evidence adduced at trial.
Louisiana Constitution article I, section 17 (A), guarantees to a defendant the "right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." The number of peremptory challenges granted to a defendant in a trial of an offense punishable by imprisonment at hard labor is fixed by law at 12. La. C. Cr. P. art. 799.
When a defendant uses all 12 of his peremptory challenges, an erroneous *210 ruling of a trial court on a challenge for cause that results in depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. State v. Juniors , 03-2425 (La. 6/29/05), 915 So.2d 291. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and a defendant has exhausted his peremptory challenges. Id. Therefore, where all peremptory challenges have been used, a defendant need only demonstrate the erroneous denial of a challenge for cause to establish reversible error warranting reversal of a conviction and sentence. State v. Dotson , 16-0473 (La. 10/18/17), 234 So.3d 34, 2017 WL 4681942 ; State v. Juniors , supra .
Challenges for cause are governed by La. C. Cr. P. art. 797, which states:
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.
Voir dire examination of prospective jurors is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Drew , 360 So.2d 500 (La. 1978). The questions propounded are designed to determine any potential adverse influence on a juror's ability to render an impartial verdict. Id. A prospective juror's responses during voir dire cannot be considered in isolation. State v. Dotson , supra , citing State v. Frost , 97-1771 (La. 12/1/98), 727 So.2d 417. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably inferred. State v. Clark , 12-0508 (La. 12/19/16), 220 So.3d 583 ; State v. Jones , 474 So.2d 919 (La. 1985). A challenge for cause is not warranted when a prospective juror volunteers an opinion seemingly prejudicial to the defense, but subsequently, after further inquiry or instruction (frequently called "rehabilitation"), has demonstrated an ability and willingness to decide the case impartially according to the law and evidence. State v. Robertson , 630 So.2d 1278 (La. 1994) ; State v. Brown , 46,669 (La. App. 2 Cir. 2/29/12), 86 So.3d 726, writ denied , 12-0724 (La. 9/14/12), 97 So.3d 1016.
A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Tucker , 13-1631 (La. 9/1/15), 181 So.3d 590. A court's evaluation of the attributes required to qualify a prospective juror is entitled to great weight.
*211 State v. Hampton , 50,561 (La. App. 2 Cir. 5/18/16), 195 So.3d 548, writ denied , 16-1181 (La. 5/26/17), 221 So.3d 854. Accordingly, the trial court's exercise of the wide discretion that determination requires will not be set aside unless it is arbitrary and unreasonable. Id. ,citing State v. Webb , 364 So.2d 984 (La. 1978).
In the case sub judice , Defendant states that he challenged Patsy Ann Whitlow for cause because she indicated that she had a family member who was the victim of a sexual assault, that she would be emotional in her reactions to this case and that she was not convinced she could be a fair and impartial juror. A review of voir dire shows that Ms. Whitlow disclosed that a family member was the victim of sexual assault seven years earlier and that an allegation of rape "clouds [her] judgment of whether someone is guilty or not." She stated that she is very emotional regarding allegations of rape, but would not hold the charges against Defendant in her deliberations. She agreed that Defendant was presumed innocent and stated that she would require the state to prove its case beyond a reasonable doubt. Ms. Whitlow was excused by a peremptory challenge by Defendant.
Defendant states that he challenged Loretta Ford for cause because she indicated that she would have difficulty being fair and impartial because of the nature of the charges against him and because she has a 25-year-old daughter and would project her into the case. A review of voir dire shows that Ms. Ford agreed that Defendant was entitled to a fair trial. When questioned by defense counsel about her ability to be fair, she stated that she might "get a little emotional," but that it would not affect her ability to serve on the jury. She explained that she would be thinking about those circumstances happening to her daughter. She agreed that even though she would have a difficult time, it would not prevent her from being fair and impartial given the allegations in this case. Ms. Ford was accepted as a juror.
Defendant states that he was never permitted to complete his argument challenging Brian Edward Bogle. He stated that the trial court believed that Mr. Bogle was trying to get out of jury service. A review of voir dire shows that Mr. Bogle indicated that he delivered mail to both families and was uncomfortable about the case. However, he then stated that he did not believe he would have to account to either family for the verdict. He also indicated that his mind would be on other things and that he would be distracted because his wife was to receive the results of cancer testing on the following Monday. He stated that he would not make any decision as to guilt or innocence until he heard every piece of evidence. Mr. Bogle was temporarily accepted as a juror, but he was later excused by a peremptory challenge by the state.
Defendant states that he challenged Robert James Heard for cause because he indicated that he did not know if he would be able to be fair and impartial because he has a 15-year-old daughter. A review of voir dire shows that Mr. Heard agreed that Defendant is entitled to a fair and impartial jury. He stated that he could be fair and impartial, could follow the law and would not make any decision as to guilt or innocence until he heard every piece of evidence. He stated that having a 15-year-old daughter gives him some pause about serving on this jury; however, he would like to think he could be impartial, but that there is a "little bit of doubt." Mr. Heard was excused by a peremptory challenge by Defendant.
*212 A review of the voir dire record as a whole reveals no abuse of discretion by the trial court in its denial of Defendant's challenges for cause. It is undisputed that Defendant exercised all 12 of his peremptory challenges. Defendant used peremptory challenges on two of the four potential jurors at issue in this case. Mr. Bogle did not serve on the jury because of a peremptory challenge by the state. Following the trial court's denial of Defendant's challenge for cause as to Ms. Ford, he still had peremptory challenges available, but chose not to use one to excuse Ms. Ford.
Defendant has failed to show that the trial court erred in denying the four challenges for cause at issue. The totality of the prospective jurors' responses during voir dire demonstrates that they were able and willing to decide the case impartially according to the law and evidence. Although Ms. Whitlow initially expressed concern about her ability to serve as a juror because of her relative who was the victim of sexual assault, she was successfully rehabilitated. A prospective juror's relationship to a person who was the victim of a crime does not disqualify a prospective juror from serving. State v. Dotson , supra . Although Ms. Ford initially expressed concern with her ability to serve as a juror due to the nature of the charges, she was successfully rehabilitated and confirmed that the allegations against Defendant would not prevent her from being fair and impartial. Although Mr. Heard initially expressed concern about his ability to serve as a juror because he has a 15-year-old daughter, he was successfully rehabilitated and confirmed that he could be fair and impartial and could follow the law. Further, Defendant was not prejudiced by the trial court's denial of Defendant's challenge for cause as to Mr. Bogle because Mr. Bogle was excused by a peremptory challenge made by the state. The trial court was not arbitrary or unreasonable and therefore did not abuse its discretion when denying these challenges for cause.
Accordingly, this assignment of error lacks merit.
ERRORS PATENT
Minutes
An error patent review reveals a discrepancy between the transcript and the minute entry for the sentencing hearing. The sentencing transcript indicates that the trial court sentenced Defendant to "life imprisonment at hard labor without benefit of probation, parole or suspension of sentence" on the conviction for aggravated rape. However, the minutes do not reflect that the life sentence is to be served at hard labor.
La. C. Cr. P. art. 871(A) provides that a "[s]entence shall be pronounced orally in open court and recorded in the minutes of the court." When there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch , 441 So.2d 732 (La. 1983).
Accordingly, we order that the May 3, 2016 minute entry be amended to reflect that the sentence imposed for the conviction of aggravated rape be served "at hard labor."
Sex Offender Notification
An error patent review further reveals that the trial court did not provide Defendant with notice of his obligation to register as a sex offender.
Aggravated rape is a sex offense as defined by La. R.S. 15:541(24)(a), and La. R.S. 15:542 provides registration requirements for sex offenders. La. R.S. 15:543 requires the trial court to provide written notice of registration requirements to a defendant charged with a sex offense. The *213 statute also requires that such notice be included on any guilty plea forms and judgment and sentence forms provided to the defendant and that an entry be made in the court minutes confirming the written notification.
Accordingly, we order that this matter be remanded to the trial court for the purpose of providing the appropriate written notice to Defendant of the sex offender registration requirements.
CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant Demarcus S. Payton are affirmed. We order that the May 3, 2016 minute entry be amended to reflect that the sentence imposed for the conviction for aggravated rape be served "at hard labor." We further order that this matter be remanded to the trial court with instructions to provide Defendant with the appropriate notice regarding sex offender registration requirements.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.