JjLOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of *511 Caddo, State of Louisiana. The defendant, James Edward Lattin (“Lattin”), was convicted of possession of a Schedule I controlled dangerous substance, methylen-edioxymethamphetamine (“MDMA”), in violation of La. R.S. 40:966(C). He was adjudicated a second felony offender, and sentenced to pay court costs or in default thereof to serve ten days in the parish jail. In addition, Lattin was ordered to serve eight years at hard labor, without benefit of probation, parole or suspension of sentence, with credit for time served. The sentence, in lieu of costs, was ordered to run concurrent with the hard labor sentence. Lattin appeals his conviction and sentence. We affirm for the following reasons.
FACTS
On October 21, 2001, Shreveport Police Department narcotics agents conducted a “knock and talk” at Lattin’s home. Officer Randy Benton (“Benton”) testified that he observed the defendant with his hand in his left pocket and that he gave the defendant a verbal command to remove his hand from his pocket. Benton stated that Lat-tin was then placed on the ground. According to Benton, he asked the defendant what was in his pocket and was told by Lattin that it was only his cell phone and that the police could search it. A pat down search revealed a cell phone and two tablets which appeared to the officers to be MDMA, otherwise known as Ecstasy.
Lattin was originally charged by bill of information with possession of a Schedule IV controlled dangerous substance in violation of La. R.S. |240:969(C). Subsequently, the state amended the bill of information to charge Lattin with possession of a Schedule I controlled dangerous substance, MDMA, in violation of La. R.S. 40:966(C). Lattin filed a motion to suppress the evidence he argued was illegally obtained at his arrest, which motion was denied. The defendant was tried by jury, found guilty of the charges, and sentenced as stated. This appeal by Lattin ensued.
DISCUSSION
On appeal, Lattin asserts one assignment of error, namely that the trial court erred in denying his challenge for cause as to one prospective juror, Margaret Lenley (“Lenley”), during the voir dire.
When a defendant uses a peremptory challenge after a challenge for cause has been denied, the defendant, in order to obtain a reversal of his conviction, must show erroneous denial of the challenge for cause and use of all peremptory challenges prior to completion of the jury panel. La. C. Cr. P. art. 800; State v. Ross, 623 So.2d 643 (La.1993).
Prejudice is presumed when a trial court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. State v. Robertson, 92-2660 (La.01/14/94), 630 So.2d 1278, 1280. This is because an erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. State v. Cross, 93-1189 (La.06/30/95), 658 So.2d 683, 686. Therefore, to prove there has been an error warranting reversal of a conviction and sentence, a defendant need only show: (1) the trial court’s 13erroneous denial of a challenge for cause; and (2) the use of all of his peremptory challenges. State v. Kang, 2002-2812 (La.10/21/03), 859 So.2d 649; State v. Cross, supra; State v. Robertson, supra.
In the instant case, the record reflects Lattin used all of his peremptory challenges. We therefore must determine only the issue of whether the trial judge erroneously denied the defendant’s challenge for cause of the juror, Lenley.
*512 Lattin contends that Lenley demonstrated a bias in favor of the testimony of police officers over other witnesses. In support of his argument the defendant cites State v. Walker, 577 So.2d 770, 773 (La.App. 2d Cir.1991), writ denied, 581 So.2d 704 (La.1991), in which this court held:
A challenge for cause should be granted even where a prospective juror declares impartiality if the juror’s testimony on voir dire reveals the existence of facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably inferred. State v. Smith, 430 So.2d 31 (La.1983); State v. Albert, 414 So.2d 680 (La.1982); State v. Lewis, 391 So.2d 1156 (La.1980). The true test of a juror’s qualification to serve is his or her ability to judge impartially based on the evidence adduced at trial, as gleaned from the totality of responses given at voir dire. State v. Williams, 410 So.2d 217 (La.1982).
A trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on review unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Kang, supra; State v. Johnson, 36,014 (La.App.2d Cir.06/12/02), 821 So.2d 652; State v. George, 26,867 (La.App.2d4 Cir.04/05/95), 652 So.2d 1382, writ denied, 95-1151 (La.09/29/95), 660 So.2d 855; State v. Walker, supra.
A challenge for cause is not warranted where a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case impartially according to the law and evidence. State v. Eastin, 419 So.2d 933 (La.1982); State v. Johnson, supra; State v. Wiley, 614 So.2d 862 (La.App. 2d Cir.1993).
Lenley was called and examined with a panel of prospective jurors. The initial questioning was routine, with Lenley being asked the same questions as the other prospective jurors. Lenley stated that she understood the trial court’s instructions and could follow them. During the voir dire, she stated that she had no questions about the difference between actual and constructive possession and agreed with the other prospective jurors that she would follow the law as instructed by the trial judge. She stated that she had no problems with the legal definition of criminal intent and agreed that the burden of proof was on the state and that the defendant did not have to prove anything.
In questioning by the defendant’s counsel, Lenley, as well as the other prospective jurors, acknowledged that she would not know if she had Ecstasy in her hand. All of the prospective jurors, including Lenley, indicated to counsel that if the state got real close to, but not beyond, reasonable doubt, they would not have a problem finding a verdict of not guilty.
| sAgain, Lenley was asked if she could find the defendant not guilty if the state came up just a little bit short of its burden of proof. She replied, “Yes.” When asked, along with the other prospective jurors, if she did not like what the judge told her the law was, would she have any problem or hesitation following the law, to which question Lenley answered, “No.” She also agreed that in considering the evidence, she would give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence.
After both counsel had questioned the prospective jurors, the defense counsel challenged Lenley for cause, arguing “she indicated that she would find a police officer more creditible [sic] than a lay person,” and therefore could not be impartial. *513 The state responded with a request for time to rehabilitate her.
As is shown in the following excerpt from the transcript, when Lenley was brought back in to be rehabilitated, she acknowledged that was her position. The questions by the state commenced as follows:
THE COURT: Ms. Lenley, you indicated in response to a question concerning listening to and finding credibility or more creditable [sic] or less creditable [sic] as far as police officers or law enforcement officers and lay persons. Can you put in your own words how you feel about that?
MS. LENLEY: From the question he asked if I were speaking to them on the street or somewhere I would find them to be equal. But if it was on the witness stand and I didn’t know him or the other person and I was listening to both of them and they were telling two opposite tales then I would have to lean more credibility to the police officer.
THE COURT: Is that just because they were a police officer?
|fiMS. LENLEY: Because of their training.
THE COURT: If the other person had an equal amount of training—
MS. LENLEY: Then they would be equal.
THE COURT: If there was no evidence one way or another about their training—
MS. LENLEY: I believe the question they asked, like I said the other day when I said the same thing, that if a police officer said one thing and the witness contradicted it and said something else which of the two would I give credibility to, and I would have to go with the police officer because of his job, because of the investigation that he did.
THE COURT: That’s based on your experience concerning your training and your observation?
MS. LENLEY: That’s based on my observation and also how I feel.
THE COURT: Any other questions?
MR. BROSSETTE: Ms. Lenley, if a person said one thing and a lay person or another witness said totally the opposite and it was a trial and the state couldn’t produce any other evidence to show guilt do you think that would be sufficient for beyond a reasonable doubt?
THE COURT: That’s an entirely different question. Restate the question.
MR. BROSSETTE: Ms. Lenley, if you found a police officer to be, his testimony to not be creditable [sic ] and the Judge instructed you if you find a witness’s testimony not creditable [sic], that you may disbelieve the entirety of his testimony would you have any problem under the law disbelieving the entirety of a police officer’s testimony?
MS. LENLEY: No, if it was a problem and he was not creditable [sic ].
MR. BROSSETTE: If you found a lay person or a witness to be creditable [sic ], yet you found the police officer to be uncreditable [sic ] based on your observations would you have difficulty believing the lay person?
|7MS. LENLEY: Not as long as — you’re asking me two things that observed a single incident?
MR. BROSSETTE: Yes, ma’am.
MS. LENLEY: I have two people observing the same thing and I don’t know either one of these people. But all of sudden I have two people saying “I saw it happen this way” and “I saw it happen this way.” In my mind which one has been trained to be more observant as to the incident that occurred. There are *514 two people saying they saw the same thing but yet they didn’t see the same thing, and if that is all they are telling me.
MR. BROSSETTE: If there is independent evidence that cast doubt on the police officer’s testimony would you have any difficulty—
MS. LENLEY: No, if there was sufficient evidence.
THE COURT: If the State failed to meet its burden beyond a reasonable doubt would you find the defendant not guilty?
MS. LENLEY: Of course.
MR. BROSSETTE: Would you follow the law as given to you by the Judge?
MS. LENLEY: Of course.
MR. BROSSETTE: Would you apply that law in your evaluation of witnesses whether they be law enforcement or lay persons?
MS. LENLEY: To the best of my ability.
MR. BROSSETTE: Thank you.
MR. CUCCI: No questions, Judge.
THE COURT: Ms. Lenley, what it gets down to, among other things, even if you have feelings concerning police officers what you would be expected to do as a juror is to listen carefully of [sic ] every witness, whether they are law enforcement officers or lay persons, their ability to recall and relate facts to which they testify, their demeanor on the witness stand, any interest they may have in the case or lack of interest, and all those things that help you in weighing their credibility, but treat them equally. Can you do that?
CMS. LENLEY: Of course.
Generally, an individual who will unquestionably credit the testimony of law enforcement officers over that of defense witnesses is not competent to serve as a juror; however, the fact that a prospective juror states she would give weight to a law enforcement officer’s training in the area of observation when assessing his credibility is not automatic grounds for a peremptory challenge, if the entire transcript shows that the potential juror demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Kang, supra. Here, Lenley acknowledged that she would be more likely to believe the testimony of a police officer when his testimony involved areas where the officer’s training and experiences may make him more observant than a lay witness in the same situation. Furthermore, Lenley did not state that she would always believe a police officer over a lay witness.
Lenley also unequivocally stated that she would follow the law as given by the trial court and listen carefully to every witness, whether law enforcement or lay. Further she would assess each witness’ credibility by their ability to recall and relate facts to which they testify, their demeanor on the witness stand, their interest or lack of interest, and that she would treat each witness equally. Clearly, the state was able to show that despite Lenley’s opinion, she was able and willing to decide the case impartially according to the law and evidence before her. So considering, there is no showing that the trial court’s decision was an abuse of its discretion, and we |9conclude that defendant’s assignment of error is without merit. Therefore, for the foregoing reasons, defendant’s conviction and sentence is affirmed.
AFFIRMED.