DREW, J.
| ¡James Baker was convicted of molestation of a juvenile and sentenced to 11½ years at hard labor, eight years of which were suspended. The balance was ordered served without benefits. He was placed on probation, commencing upon his release from prison. We affirm the conviction but remand for resentencing.
FACTS/TESTIMONY
1. KB, the victim
KB, the victim, was adopted at age six by James Baker. When she entered the third grade, Baker began “punishing” her for getting in trouble at school by forcing her to kneel naked on her bed while he inserted his fingers in her vagina. After Baker punished her, he would make her *573 discuss what she had done wrong, what she would do differently next time, and he would tell her he loved her. Once Baker inserted something much larger than his finger in her vagina, but she did not see what it was because she always had her eyes covered either with her hands or her shirt. When Baker was asked if he had put his penis in her vagina, he denied it.
KB testified that Baker was always at home alone when KB would get off the bus from school. He would:
• make her strip naked and sit on his lap;
• wrestle with her and touch her inappropriately;
• grab her breasts and her buttocks;
• not allow her to close her door when she got dressed; and
• make her sit on his lap every day, until she was 16 years old.
KB stated she feared Baker, who was a controlling type of person.
This perverted punishment occurred from the time KB was in the third grade until she was in the eighth grade, whereupon she told her mother, who initially took KB and her younger sister to stay with her parents. Shortly thereafter, she returned to the home with her children, while Baker was still there.
Although the defendant refrained from putting his fingers in KB’s vagina after she told her mother, KB testified that he wanted her to kiss him on the mouth when they said goodbye, and made her feel like she was his girlfriend.
KB testified that because her mother brought her back to the family home with her father still there, she felt like defendant’s behavior was “supposed to 1 shappen.” Her mother even told her that she had been abused as a child and that it was not a big deal. After that, KB never confided in her mother again and, until much later, never told any other family member about the ongoing abuse.
KB had never been told anything about her biological father and did not even know her biological family’s name. In 2008, she obtained her biological aunt’s phone number from records at her parents’ house after the relatives called her mother regarding KB’s biological father’s death. KB began calling and texting them thereafter and established a telephone relationship with her uncle, Michael Wissb-aum, who was a police officer. KB eventually revealed to them that she hated her adoptive father, who had been molesting her for many years. The Wissbaums contacted child protective services in Shreveport, which validated the charges. Around the same time, KB told her high school softball coach that her father was sexually abusing her. The coach also notified the authorities. KB and her sister were removed from the family home. The defendant was arrested and charged for violating La. R.S.14:81.2(A), (C) and (D), molestation of a juvenile.
At the time of the trial KB was a senior in high school. She testified that her contact with her biological family in Missouri was clandestine because her parents did not want her to have contact with them. KB stated she did not tell anyone about the abuse because she just did not want to talk about it. She was embarrassed to tell her mother, who never did anything to correct the situation.
KB admitted that she had lied in the past about a sexual experience with the defendant. She stated she lied to “get back at him,” to make him mad, “for everything he’d done” to her and to be “as controlling as he was over me.” She stated, “He acted like I was just his and everything and he stressed to me on a daily basis — well, maybe not a daily basis, *574 but a regular basis on how boys were not allowed to touch me like he did and other people were not allowed to touch me like he did.” The defendant’s attorney attacked KB’s credibility throughout the cross-examination and pointed out different times KB had lied to friends or misled them in text messages about her situation with her father. He continued to question her regarding minor and irrelevant lies she told at other times. KB admitted that some of her texts were lies, for instance that she was doing drugs, and that she made up those lies because she knew her mother had acquired some software that allowed her access to the content of KB’s text messages. KB was suspicious of her mother and was attempting to goad her into responding so that KB would know if her |4mother was still reading her text messages to friends. KB testified that she was so tired of the process she was being put through while her father was under investigation that at one time she had considered pulling the “it didn’t happen” thing, but she did not think it would work. KB explained she contemplated reneging on her story because she was embarrassed to have to speak to so many people about what had happened to her and it was very unpleasant to have to relive all the bad things that happened to her in her life.
2. Daniel Lay and 3. Billy Crosby
Daniel Lay was the youth pastor at defendant’s church. Billy Crosby was the senior pastor. They testified regarding a 2006 meeting after KB told her mother about the molestation. Lay was contacted by the mother first, and he told her she needed to confront the defendant about the situation. Lay told her that he was going to contact Pastor Crosby and that they would all have a meeting. She and James went to the meeting and both Lay and Crosby testified that James was a broken man, crying, shaking, repeatedly stating that he had not meant any harm. Neither man asked him exactly what he had done, but he never once denied the allegations that KB had made. Lay attended only that one meeting, and then Baker counseled with Crosby four or five times. Stunningly and sickeningly, Crosby told the mother that he was satisfied that James had repented, that the abuse would stop, and that it was a “punishment” thing.
4. The mother
The mother denied ever knowing any abuse was going on before December 2006, and thought that once she was made aware of it, it did not continue. She admitted that the child told her about her “punishment” such as James making her get down on all fours naked so that he would touch her anus and her breasts. The mother confronted the defendant, who acted shocked, professing not to know what she was talking about. They decided to let the church people handle the situation. The mother never went to the police, instead arranging for the girls to go to their grandparents’ homes after school instead of being alone with James. She never asked James about the counseling and never talked about the situation, feeling that it was better not to discuss such things.
She yelled at James and he would just stand there, look down, and not answer her. The mother denied knowing that he placed his fingers in KB’s vagina, though she confessed that the child told her that when she was punished she had a |Bchoice between James putting his fingers in her vagina or her anus. The mother denied witnessing any punishment that would have been considered sexual abuse.
5. Deputy Dorothy Brooks
Caddo Sheriffs Deputy Dorothy Brooks interviewed KB in 2008 when she was *575 removed from the home. Brooks testified KB told her she realized she was the -victim of sexual abuse by her adoptive father only when she was in middle school and the school showed a movie on sexual abuse. It was then she knew that what her father was doing to her was not normal. KB told Brooks that her father would strip naked and they would hang out at the house naked until right before her mother came home from work. KB told her James forced her to sleep naked in bed with him when her mother was out of town and when they went hunting on the weekends. KB told Deputy Brooks that James told her if she ever wanted to have sex with him, he would find it hard to say no.
6. Other witnesses
Other witnesses at trial included:
• K.Y., KB’s friend in middle school in whom KB had confided;
• Wendy Chamberlain, a friend of the mother to whom she turned in 2006 when KB told her the defendant had been molesting her; and
• The mother’s father.
TRIAL AND SENTENCING
The six-person jury convicted the defendant as charged. His motions for post verdict judgment of acquittal and new trial were denied.
Defendant alleged that although he had been charged with violating La. R.S. 14:81.2(A), (C) and (D), the element involved in (D) — that the molestation must have recurred over a time period of more than a year — had never been discussed at trial. A person found guilty of paragraph (D) is subject to a possible penalty of 5 to 40 years at hard labor with at least five years without benefit of parole, while the penalty for paragraph (C) is 5 to 20 years, with benefit of parole. The state stipulated for the trial court to sentence Baker under La. R.S. 14:81.2(C).
At the sentencing hearing, the trial court considered the factors of La. C. Cr. P. art. 894.1 and sentenced the defendant to 11⅜ years in prison at hard labor with the first 3½ years to be served without benefit of probation, parole or suspension of | r,sentence. The balance of the sentence was suspended. Defendant was ordered to register as a sex offender. He was granted bond pending appeal.
DISCUSSION
La. R.S. 14:81.2 states in pertinent part as follows:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age shall not be a defense. * * *
C. Whoever commits the crime of molestation of a juvenile, when the victim is thirteen years of age or older but has not yet attained the age of seventeen, and when the offender has control or supervision over the juvenile, shall be fined not more than ten thousand dollars, or imprisoned, with or without hard labor, for not less than five nor more than twenty years, or both[.] [T]he defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with Code of *576 Criminal Procedure Article 893. (Punctuation added.)
Sufficiency of the Evidence
Sufficiency Argument # 1
The defense argues the state’s evidence presented at trial was insufficient to support his conviction for molestation of a juvenile because the only witness to provide any direct evidence was KB, who, the defense claims, was shown on the witness stand to be untruthful. The defendant claims that although the court must accord great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
Defendant further claims that although the appellate court defers to the trier of fact regarding credibility determinations, that deference is not absolute. He argues that when a jury relies solely on the testimony of a single witness to establish a factual conclusion, another principle comes into play that states, “In the |7absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.” Stated another way, where a jury relies on one witness’ testimony to establish the guilt of the defendant, that testimony must be free from internal contradiction or conflict with physical evidence. The defendant notes that KB admitted lying frequently.
The defense argues that the balance of the state’s witnesses testified that they heard the allegations against the defendant from KB, or heard the allegations indirectly. As is often the case in sexual abuse cases, there are no witnesses with direct evidence except the victim and the aggressor. The defense points out that the defendant’s wife testified that her husband never confessed to molesting KB, and she never witnessed any such acts against her daughter, or any actions indicating anything other than a normal father-daughter relationship. The direct evidence of the defendant’s guilt was the uncorroborated, contradictory, and vague testimony of the victim. Because the testimony of a single witness should be free of internal contradictions and must reconcile with the physical evidence, defendant argues that we are not bound by the jury’s reliance on KB’s testimony.
Sufficiency Argument # 2
The defense’s second argument is that the evidence is insufficient for a conviction because an element of the crime charged has not been met. That necessary element for molestation of a juvenile is that a “lewd or lascivious act” is done with “the specific intent to arouse or gratify either the child’s sexual desires or [defendant’s] own sexual desires.” In this case, it was repeated at trial many times that the defendant was not sticking his fingers in KB’s vagina for his own sexual gratification, but rather, that it was punishment, like a spanking, for her transgressions at school. The defendant claimed, “As strange as it may seem to characterize the alleged conduct as ‘discipline’ or ‘punishment,’ it was not the defendant who made that characterization, but the victim herself.” Therefore, the defendant claims the state failed to prove every essential element of the charge of molestation of a juvenile, and he is entitled to have his conviction overturned.
The state argues that the testimony of the victim alone is sufficient to convict a defendant and this is especially applicable to the testimony of sexual assault victims. *577 See State v. Thomas, 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808, writ denied, 1999-0331 (La.7/2/99), 747 So.2d 8. The state points out that in the |sabsence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed, is sufficient to convict.
The state notes that the defendant’s argument is that internal contradiction exists that requires this court to reverse the conviction on insufficiency of evidence grounds; however, a look at KB’s testimony reveals this argument lacks merit. Her testimony at trial, which was believed by the jury, described in great detail the abuse she suffered at the hands of her adoptive father from the time she was in the third grade. The state argues that her testimony at trial was subject to the scrutiny of the jury, and they were free to determine whether or not her narrative was plausible. Defendant attacks her credibility by pointing out her past lies, but the jury was able to look beyond this attack and determine that they believed KB had been the victim of her father’s aberrant behavior.
Further, the state notes that evidence in the form of testimony from other witnesses indicates that the defendant consulted with his pastor and never denied having committed these acts. The jury members were able to weigh the witnesses’ credibility and make their determination based on the facts presented. The jury obviously believed that this was perversion, not just punishment.
Our law on review for the sufficiency of the evidence is well settled.[1]
*578 |nIn this case, the evidence presented at trial was sufficient to establish each element of the crime of molestation of a juvenile. The evidence presented satisfies the requirements of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There was no internal contradiction in the testimony of any witness, and the evidence presented was sufficient for a reasonable juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime with which he was charged. No matter what the defendant’s alleged justification for sexually abusing his daughter, the jury concluded that there can be no justification for these horrid acts.

Illegal Sentence

Defendant correctly claims that his sentence is illegal because of the denial of eligibility for benefits, contrary to the penalty provision of the crime. He is correct.
We will remand to the trial court for resentencing.[2]
DECREE
The defendant’s conviction is affirmed. The matter is remanded to the trial court for resentencing.
AFFIRMED AND REMANDED.

. The standard for review in cases that raise a sufficiency of the evidence claim is found in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/06/09), 21 So.3d 297., The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 1999-0023 (La. 1/26/00), 775 So.2d 1022, cert, denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La. 1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607; State v. Lott, 535 So.2d 963 (La.App. 2d Cir. 1988).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. When the conviction is based on circumstantial evidence, such evidence must exclude any reasonable hypothesis of innocence. La. R.S. 15:438. State v. Cummings, 1995-1377 (La.2/28/96), 668 So.2d 1132. The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417. Ultimately, *578 all evidence, both direct and circumstantial, must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. State v. Rosiere, 488 So.2d 965 (La. 1986).

. Curiously, the state makes an argument about ineligibility for good time, which is a different issue from the prohibition of parole, probation, or suspension of sentence.