WILLIAMS, J.
hThe defendant, Harold D. Brown, was formally charged by bill of information with domestic abuse battery-strangulation, a violation of LSA-R.S. 14:35.3(L), and cruelty to a juvenile, a violation of LSA-R.S. 14:93. Following a jury trial, the defendant was found guilty of the responsive verdicts of domestic abuse battery (LSA-R.S. 14:35.3) and attempted cruelty to a juvenile (LSA-R.S. 14:27 and 14:93). After being adjudicated a third-felony offender, defendant was sentenced to serve 10 years at hard labor for the attempted cruelty to a juvenile conviction and six months in the parish jail for the domestic abuse battery conviction, with the sentences to run consecutively. The defendant appeals his conviction and sentence for attempted cruelty to a juvenile. For the following reasons, we affirm.
FACTS
On July 11, 2010, DeSoto Parish Sheriffs deputies responded to a complaint of domestic abuse at a residence in Mansfield, Louisiana. The victim, Stephanie Benton, told the deputies that during an argument with the defendant, who was her boyfriend at the time, he had choked her and then repeatedly punched and kicked her as she held her 14-month-old son. Benton also stated that defendant had urinated on her and the child and then cut off *583 her hair with clippers. The defendant was arrested and charged with domestic abuse battery-strangulation and cruelty to a juvenile.
At trial, the state called the victim, Stephanie Benton, who testified that in July 2010, she was living in Shreveport with her mother, her siblings, her 14-month-old son and the defendant. Benton stated that she had been dating the defendant for approximately five months and that on July 11, | a2010, they were in Mansfield at the home of his brother. Benton testified that they began arguing when the defendant accused her of moving his phone, he cursed at her and they went into the bathroom that was adjacent to a bedroom at the back of the house. Benton stated that defendant then pushed her down to the floor, placed his hands around her neck and choked her repeatedly for approximately 30 minutes. Benton testified that she told the defendant that she could not breathe, but “he didn’t care.” Benton stated that during the altercation her son, who was sleeping on the sofa in the bedroom, woke up and began to cry. She explained that defendant allowed her to get her son, but then forced her to return to the bathroom, where she sat in a corner with her son in her arms.
In addition, Benton testified that defendant stood over them and repeatedly punched her in the head, kicked her in the shins, and hit her in the face. Benton stated that at the time, she was not sure if any of the defendant’s punches or kicks directly landed on her son, but the child was crying throughout the attack and afterward, she noticed bruises and marks on her son’s back. Benton testified that at some point she was able to grab a candle-holder and hit defendant in his face, but he took the object away. Benton stated that as she was cradling her son and sitting in the corner, the defendant urinated on her and the child. Benton testified that the defendant then sat on her and cut off all of her hair with electric clippers. On cross-examination, Benton stated that her son did not receive any medical treatment and that she did not take any photographs of the child’s injuries or mention those injuries to the sheriffs department.
laThe state presented the testimony of Henry Touchton, a deputy with the DeSoto Parish Sheriffs Office. Touchton testified that on July 11, 2010, he received a dispatch and when he arrived oh the scene, the victim was crying and in “bad shape.” Touchton stated that Benton’s testimony in court was exactly the same as her statement that night. Regarding the victim’s injuries, Touchton testified that her hair had been cut off and there appeared to be knots on her head and marks on her throat. Touchton stated that upon entering the bathroom, he noticed hair on the floor, which was damp. Touchton testified that he did not see the victim’s child, but had heard the sound of what he thought was her son in another room, where someone was trying to calm the child. Touch-ton stated that Benton told him that defendant had urinated on her son, but that she did not mention any other injuries to the child. Touchton testified that although he had noticed the floor was damp, he did not smell anything and so he assumed the liquid was water, but he did not know.
The state’s final witness was Brandon McCoy, a deputy with the DeSoto Parish Sheriffs Office. McCoy testified that he took photographs showing the knots on the victim’s head and marks on her throat. McCoy stated that he also took a photograph which showed the victim’s hair, defendant’s blood and some liquid on the bathroom floor, but that he could not pinpoint whether or not there had been urine on the floor. McCoy testified that he had not seen a child present at the residence.
*584 Following deliberation, the jury found the defendant guilty of the responsive verdicts- of domestic abuse battery and attempted cruelty to a | Juvenile. The defendant's motion for judgment of acquittal was denied. After a hearing, defendant was adjudicated a third-felony offender, having been previously convicted of armed robbery and unauthorized entry of an inhabited dwelling. The trial court sentenced the defendant to serve 10 years at hard labor for the attempted cruelty to a juvenile conviction and six months in parish jail for the domestic abuse battery conviction, with the sentences to run consecutively. This appeal followed.
DISCUSSION
The defendant contends the evidence presented was insufficient to convict him of attempted cruelty to a juvenile. Defendant argues that the only evidence that he mistreated the child was the mother’s testimony, which was not supported by any photographs, medical records or police observations.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the I,circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, unit denied, 2009-0372 (La.11/6/09), 21 So.3d 299. When a conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Baker, 46,089 (La.App.2d Cir.3/2/11), 58 So.3d 571.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. The appellate court does not assess the credibility of witnesses or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a fact finder’s decision to accept or reject the testimony of a witness in whole or in part. State v. Shivers, 43,731 (La.App.2d Cir.12/3/08), 998 So.2d 877.
Cruelty to juveniles includes the intentional or criminally negligent mistreatment or neglect by anyone 17 years of age or older of any child under the age of 17 whereby unjustifiable pain or suffering is caused to the child. LSA-R.S. 14:93(A)(1). “Mistreatment” as used in this statute is equated with abuse. State v. Booker, 02-1269 (La.App.1st Cir.2/14/03), 839 So.2d 455.
 • Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of accomplishing his object is guilty of an attempt to commit *585 the offense intended and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. Mere preparation to commit a crime shall not be sufficient to constitute an attempt. LSA-R.S, 14:27. Thus, specific intent to commit a crime is an element of an attempted offense and the state has the burden of proving the defendant’s specific intent to commit the charged crime. State v. Prim, 44,230 (La.App.2d Cir.5/20/09), 13 So.3d 758. The state must also prove that the offender committed or omitted an act for the purpose of accomplishing his object. The trier of fact must determine whether the defendant acted toward the commission of a crime by examining the totality of the circumstances. State v. Jones, 2010-0762 (La.9/7/11), 74 So.3d 197; Prine, supra.
Specific criminal intent is the state of mind that exists when the offender actively desired the prescribed criminal consequences to follow his act or failure to act. Jones, supra. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. LSA-R.S. 14:10(1); State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982).
In the present case, the victim testified that the defendant repeatedly |7punched and kicked her while she was holding her 14-month-old son in her arms and then he purposefully urinated on the victim and her child. Contrary to defendant’s assertion in his brief, the evidence supports a determination by the jury that defendant’s act of urinating on the child was not merely “unpleasant,” but constituted abuse. In light of all of the circumstances, the jury could have reasonably found that defendant acted with the specific intent to cause unjustified suffering by mistreating the child and performed an act to accomplish the crime. Based upon this record, the evidence presented was sufficient to support the defendant’s conviction for attempted cruelty to a juvenile. Thus, the assignment of error lacks merit.

Juror Challenges for Cause

The defendant contends the trial court erred in denying the defense’s challenges for cause as to prospective jurors Theresa Stewart, Michael Reynolds and Dekeldric Richardson. Defendant argues that these prospective jurors should have been rejected for cause because their responses showed their inability to be impartial or to follow the law.
Prejudice is presumed when a trial court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. State v. Lattin, 37,917 (La.App.2d Cir.4/7/04), 870 So.2d 509, citing State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278. This presumption arises because an erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. State v. Lattin, supra. To prove there has been an error | ^warranting reversal of a conviction and sentence, a defendant must show: (1) the trial court’s erroneous denial of a challenge for cause; and (2) the use of all of his peremptory challenges. State v. Kang, 2002-2812 (La.10/21/03), 859 So.2d 649.
A challenge for cause is not warranted where a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case im *586 partially according to the law and evidence. State v. Lattin, supra. A trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Lattin, supra.
A defendant may not assign as error a ruling to deny a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of the objection. LSA-C.Cr.P. art. 800(A).
During jury selection, in response to a question about whether any relative had been a victim of crime, prospective juror Theresa Stewart stated that her father had been murdered in 1993 in a convenience store robbery in Bossier Parish, and that an arrest was never made. She said that the police felt they knew who had committed the murder, but did not have enough evidence to make an arrest. Stewart stated that her family had recently been informed by the police that the person thought to have committed the crime had passed away, and the case was closed as a result. Defense counsel, | ;>Angela Waltman, then asked Stewart the following:
Q: And because of that, do you think that serving as a juror and having to listen to testimony from law enforcement and from a victim in a case, do you think that would be really upsetting to you based on your personal experience or difficult for you?
A: (Juror-Theresa Stewart) I did have to have counseling because of the nature of the crime. My father was brutally murdered. And I still carry some emotional scars from it.
Q: Yes, ma’am, I imagine. Well do you think that you would be able to serve as juror in this case just because of that terrible experience you had? Do you think it would be you know difficult for you to totally put that aside?
A: (Juror-Theresa Stewart) I don’t know. I’ve never been in a position to do that.
Q: Yes, ma’am. You’ve never served on a jury before?
A: (Juror-Theresa Stewart) No, huh-uh.
Q: So you’re just not certain?
A: (Juror-Theresa Stewart) Huh-uh.
After questioning of the first panel, the defense challenged for cause Theresa Stewart.
MS. WALTMAN: And I would have a challenge for cause as to Theresa Stewart. She was the one who’s [sic ] father was murdered in an armed robbery. And she said that sitting on a jury in a criminal case brings back a lot of memories for her. And she had to undergo counseling after that happened. And she said it would be difficult for her to be an impartial juror because of her situation with her dad and no one was prosecuted for the case.
MR. STAMPS: I did hear that.
THE COURT: It has been seventeen, eighteen years ago that this happened.
MS. WALTMAN: Yeah but she said they just — the person that they thought did it just passed away so her .family met with the sheriffs office recently and came to the conclusion that they could close the case because the person that probably did it passed away. So she has dealt with the matter recently.
MR. STAMPS: I didn’t get that impression that she said she couldn’t be impartial.
*587 THE COURT: The defense’s challenge for cause is denied.
MS. WALTMAN: If you’ll just note my objection, Your Honor.
ImTHE COURT: Certainly.
The defense then used three peremptory challenges, including one to strike Theresa Stewart. A second panel was then brought in for questioning. Following the use of three peremptory challenges each by the state and defense, ten jurors had been selected.
During voir dire the next morning, prospective juror Michael Reynolds stated the following in response to the state:
Q: Let me ask you this. If you had to vote right now, having heard nothing at all, no evidence, what would be your verdict?
A: (Juror-Michael Reynolds) Probably a negative thing.
Q: A negative thing?
A: (Juror-Michael Reynolds) Yes.
Q: What do you mean?
A: (Juror-Michael Reynolds) Guilty.
Q: Guilty. Just based upon not hearing anything?
A: (Juror-Michael Reynolds) Yes.
Q: Why?
A: (Juror-Michael Reynolds) Because I don’t think it’s fair for somebody to beat up somebody else.
Q: Okay. Now you understand that he is presumed innocent until proven guilty? Meaning that we carry burden in this case, Mr. Reynolds. And you haven’t heard anything. You’ve heard nothing from here. You haven’t seen anything. So as it stands at this point, he’s innocent, right?
A: (Juror-Michael Reynolds) Yes.
Q: Okay. So given what the law is, would you still say, without hearing anything, you’d have to vote guilty at this point?
A: (Juror-Michael Reynolds) Yes.
When examined by the defense, Mr. Reynolds stated the following:
Q: Okay. Thank you very much. If you could pass the mic to Mr. Reynolds please. In response to Mr. Stamps’ questioning, you had mentioned that without hearing any evidence that you would vote guilty. Did I misunderstand you or is that what you said?
A: (Juror-Michael Reynolds) No, that is correct.
| nQ: Okay. Do you feel like the defendant has to prove he’s innocent.
A: (Juror-Michael Reynolds) Yes, I do.
Q: So do you feel the burden of proof is on the defendant and not on the state?
A: (Juror-Michael Reynolds) I think it’s on the evidence provided?
Q: I’m sorry?
A: (Juror-Michael Reynolds) I think it’s on the evidence provided on a defendant.
Q: So you would make up your mind after hearing all of the evidence?
A: (Juror-Michael Reynolds) Yes.
Another prospective juror, Dekeldric Richardson, stated the following in response to the state:
Q: Mr. Richardson, we prove our case beyond a reasonable doubt, anything about the defendant would prevent you from voting guilty?
A: (Juror-Dekeldric Richardson) (Nodded)
Q: I need you to speak.
A: (Juror-Dekeldric Richardson) I really don’t care.
Q: What did you say?
*588 A: (Juror-Dekeldric Richardson) I said I really don’t care about it.
Q: Care about what?
A: (Juror-Dekeldric Richardson) Being here.
Q: I understand. But you understand we all have a duty to be here, Mr. Richardson, do you understand that?
A: (Juror-Dekeldric Richardson) Yes, sir.
Q: And this part of our system. Do you understand that?
A: (Juror-Dekeldric Richardson) Yes sir.
Q: All right. So if we prove our case beyond a reasonable doubt, what would be your verdict, Mr. Richardson?
A: (Juror-Dekeldric Richardson) I don’t even know.
Q: You don’t know. Have you thought about this?
A: (Juror-Dekeldric Richardson) No I haven’t.
When he was questioned by the defense, Richardson stated the following:
Q: ... Mr. Richardson, you made a comment that I just want to ask you a little bit more about. That you didn’t care. What did you mean by that? That you didn’t want to be here?
A: (Juror-Dekeldric Richardson) If it was my say so, no I wouldn’t want to be here.
112After receiving several responses from Mr. Richardson that he didn’t care to be there nor was he paying attention, Ms. Waltman asked the following:
Q: I mean if you were chosen on the jury, would you be able to listen to the evidence that’s presented to you?
A: (Juror Dekeldric Richardson) Yes ma’am.
Q: Okay. And would you be able to deliberate with the other panel members and come to a conclusion?
A: (Juror-Dekeldric Richardson) Yes ma’am.
After examination of the third panel of prospective jurors, the trial court asked for any challenges for cause, to which the defense attempted to strike both Reynolds and Richardson.
The court: All right. Any challenges for cause from the defense?
Ms. Waltman: On Mr. Reynolds.
The court: I mean you rehabilitated him.
Ms. Waltman: He still said guilty. No I don’t think so.
The court: I think so. Denied.
Ms. Waltman: Okay. And Mr. Richardson, I don’t think he cares one way or the other, your Honor, about being here, about participating. He’s just not interested.
The court: All of that is true. But are you challenging Mr. Richardson for cause?
Ms. Waltman: Yeah, I was trying to. He said he didn’t care. He didn’t care about the process. He didn’t care to be here.
Mr. Stamps: Again but I think you recovered him when you asked him if you had to go to the back and deliberate with the rest of the group could you. He said, yes.
Ms. Waltman: Okay
Mr. Stamps: I mean that doesn’t mean the Court has to go with it. But that’s what I recall.
The court: Is that all of the reasons on Mr. Richardson?
Ms. Waltman: Yes your Honor.
*589 11sThe Court: The defendant’s challenge for cause is denied as to Dekeldric Richardson.
Ms. Wattman: Well I’ll just get rid of him. I guess I was just extremely disappointed that a young person would give that kind of answer. You know I mean about participating in jury service. I mean that’s just my personal opinion. I was kind of surprised.
Following the trial court’s denial of the defense’s challenges for cause, the defendant used the last of his peremptory challenges to strike Michael Reynolds and Dekeldric Richardson, along with four other prospective jurors.
Regarding Theresa Stewart, the defense argues that the challenge for cause should have been granted because Stewart said that she was not sure she could put aside the trauma of her father’s unresolved murder when listening to the testimony. Although Stewart said that she did not know what her emotional reaction might be because she had not served on a jury before, she did not state that she would be unable to be impartial. In her other responses, Stewart indicated that she understood that an accused is innocent until proven guilty, that the state has the burden of proof at trial and that defendant was not required to testify. Thus, a review of the entire voir dire transcript does not demonstrate that Stewart would be unable to serve as an impartial juror or to render a judgment according to the law. Consequently, the trial court did not abuse its discretion in denying the defendant’s challenge for cause.
We note that under Article 800(A), the defendant is precluded from 114assigning as error the trial court’s denial of the challenges for cause as to prospective jurors Michael Reynolds and Dekel-dric Richardson, because defendant failed to object at the time of those rulings. Even if defendant had made timely objections, his arguments would not have prevailed on appeal.
The defense argues that prospective juror Reynolds should have been dismissed for cause because he stated that he would vote guilty to convict the defendant even without hearing any evidence. Despite those statements, further review of the entire voir dire transcript shows that Reynolds later indicated that he would make up his mind as to guilt only after hearing all of the evidence. Therefore, because this prospective juror was rehabilitated, the trial court’s ruling denying the defense’s challenge for cause was not an abuse of discretion.
In addition, defendant argues that the challenge for cause as to prospective juror Richardson should have been granted because of his statement that he did not care about participating in the trial process. However, despite his lack of desire to be on the jury, Richardson confirmed in response to further questions that if he were chosen to be on the jury, he would listen to the evidence presented and deliberate with the other panel members to reach a decision. Based on our review of the voir dire record as a whole, we cannot say the trial court abused its discretion in denying the defendant’s challenge for cause of prospective juror Richardson. Thus, the assignment of error lacks merit.

11f¿Sentencing

The defendant contends the trial court erred in imposing an excessive sentence. Defendant argues that a lesser sentence is appropriate because he is not the worst type of offender for the offense of conviction.
*590 An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,-855 (La.App.2d Cir.2/28/07), 953 So.2d 890. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a |1fisentence will not be set aside as excessive. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802.
The penalty for a conviction of attempted cruelty to a juvenile is a fine of not more than $500 or imprisonment with or without hard labor for not more than 5 years, or both. LSA-R.S. 14:93 and 14:27(D). Under LSA-R.S. 15:529.1, a third-felony offender shall be sentenced to imprisonment for a determinate term of not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.
Prior to imposing sentence, the trial court reviewed the presentence investigation (PSI) report, which showed the defendant’s prior convictions for armed robbery in 1998, for misdemeanor domestic abuse battery in 2006 and for unauthorized entry of an inhabited dwelling in 2008. Defendant pled guilty to this lesser offense after being charged with aggravated burglary. The court noted that defendant had been charged with domestic abuse battery in 2006 and 2008 and with simple battery in 2007 and 2009.
Considering defendant’s criminal history, and the guidelines set forth in Article 894.1, the trial court found a “disturbing pattern” of abusive behavior by defendant and that there was an undue risk that the defendant would commit another crime if he was given a suspended sentence or 117probation. The court further found that the defendant’s actions manifested deliberate cruelty to Ms. Benton and her child, and that defendant was in need of correctional treatment most effectively obtained by commitment to an institution. Additionally, the court noted that there was actual violence and threats of violence by defendant in committing the crime. Furthermore, the court did not find any mitigating factors in this case.
The record demonstrates that the trial court took cognizance of the sentencing guidelines and particularized the sentence *591 to this defendant, a third-felony offender with a history of violent behavior. Accordingly, the trial court did not abuse its discretion in imposing the maximum sentence, which is not grossly out of proportion to the seriousness of the offense committed. Thus, we cannot say the sentence is constitutionally excessive. The assignment of error lacks merit.
We have reviewed the record for error patent and found none.
CONCLUSION
For the foregoing reasons, the defendant’s convictions and sentences are affirmed.
AFFIRMED.